STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-102

JIMMY CLOUD

VERSUS

JOHNNY PEART, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 214,192
HONORABLE MARY L. DOGGETT, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED.

Daniel E. Broussard, Jr.
Broussard, Halcomb & Vizzier
P. O. Box 1311
Alexandria, LA 71309-1311
(318) 487-4589
Counsel for Plaintiff/Appellant:
    Jimmy Cloud

**Laura N. Sylvester**
**Michael T. Johnson**
**Johnson, Siebeneicher, & Ingram, Inc.**
**P. O. Box 648**
**Alexandria, LA 71309**
**(318) 484-3911**
**Counsel for Defendants/Appellees:**
  **Rapides Parish School Board**
  **Johnny Peart**

**DECUIR, Judge.**

Plaintiff, Jimmy Cloud, filed this tort suit against his former employer, the Rapides Parish School Board, its employee, Johnny Peart, and the Louisiana School Employees' Retirement System. He sought damages resulting from a reduced monthly retirement benefit because of the defendants' alleged failure to inform him that he could continue to make retirement contributions during a period of disability while he was receiving workers' compensation benefits. After trial on the merits, judgment was rendered in favor of the defendants and Cloud's petition was dismissed. For the reasons assigned by the trial court, which we adopt and incorporate herein *in extenso*, we affirm:

> This case involves claims of Jimmy Cloud, a former employee of the Rapides Parish School Board, against defendants, Johnny Peart, the Rapides School Board, and the Louisiana School Employees' Retirement System, "LSERS". The Louisiana School Employees' Retirement System filed a Motion for Summary Judgment, which was granted, leaving the remaining defendants to proceed to trial on June 4, 2009. For the reasons stated herein, the court finds in favor of the defendants and dismisses plaintiff's claim at plaintiff's cost.
>
> Plaintiff alleged in his petition that he began working for the Rapides Parish School Board in 1987 and was a member of the Louisiana School Employees' Retirement System, "LSERS". In July 1993, plaintiff was severely injured while at work and was later determined to be totally disabled. He began receiving worker's compensation benefits for his injury shortly thereafter. Petitioner remained an employee of the Rapides Parish School Board and continued to collect worker's compensation benefits until his retirement in August 2002.
>
> All parties agree that Mr. Cloud was in fact eligible to "buy back" the payments he missed because of his injury and that he was eligible to make future payments into the Louisiana School Employees' Retirement System. The basis of Mr. Cloud's claim against the remaining defendants is that he was improperly informed that he could not participate in the LSERS while he was receiving worker's compensation benefits, that he relied on this misinformation, and that he has therefore suffered monetary damage as a result of reduced monthly benefit he now receives in retirement.

It is undisputed that, some time after Mr. Cloud began receiving worker's compensation benefits, he was informed by Ken Saunders (then Supervisor of Transportation and Safety) that he was eligible to "buy back" or otherwise pay into his LSERS account for the period he missed due to his injuries. He was also informed that he would be eligible to continue his membership in the system during the time he received worker's compensation benefits. Petitioner testified at trial that his own private attorney, James Downs, did confirm Mr. Saunders' information regarding LSERS.

Petitioner stated that he then contacted Johnny Peart (then Assistant Finance Manager for the Rapides Parish School Board) to discuss this matter. Petitioner alleges that this conversation with Johnny Peart took place within several months after his injury. Both parties agree that a conversation between Mr. Peart and Mr. Cloud did occur in summer 1993. However, the parties dispute the nature of the information and advice that Mr. Peart provided to Mr. Cloud.

Specifically, Mr. Cloud alleges that he informed Mr. Peart of his intention to "buy back" payments missed since the accident and to continue his membership in LSERS. He testified that Mr. Peart looked in a book and made some phone calls and stated emphatically that "it can't be done." Hence, Mr. Cloud alleges that he requested that Mr. Peart continue to make payments to LSERS on his behalf, but was informed that that he could not "buy back" his retirement time and that he could not continue to participate in the retirement system while receiving worker's compensation. Mr. Cloud then testified that he relied solely on this misinformation and did not make any further inquiries regarding his continued participation from Mr. Saunders, Mr. Downs, or with anyone from LSERS. (As set forth below, Mr. Cloud did have future communications with LSERS, but did not inquire about this particular issue).

Mr. Peart's recollection of the 1993 conversation with Mr. Cloud is quite different from that of Mr. Cloud. Mr. Peart testified that he specifically remembers the conversation, because he felt that he had given Mr. Cloud some sound advice that would ultimately save him money. Mr. Peart recalled that Mr. Cloud did inquire about "buying back" the missed payments and about continuing participation in the retirement system. However, Mr. Peart also remembered that Mr. Cloud specifically informed Mr. Peart that he was totally disabled and ***intended to go on disability retirement within the next six months***.

Based on this information provided by Mr. Cloud, Mr. Peart testified that he advised Mr. Cloud that "buying back" his time and contributing to LSERS for the next six months would not increase his ultimate amount of retirement income. He informed Mr. Cloud that, after five years of service with the School Board, every employee is

2

given the benefit of 13 1/3 years for purposes of calculating retirement. Mr. Cloud's continued participation in the system would not be in his best interest if he was going to retire prior to the 13 1/3 year total.

Mr. Peart also testified that he was very familiar with the fact that Mr. Cloud could have continued to make payments to and participate in LSERS while he was receiving worker's compensation. In fact, Mr. Peart testified that he has had many employees take advantage of that opportunity over the years. Mr. Peart assured the Court that he would not have informed Mr. Cloud that "it couldn't be done," because he knew that it certainly could be done.

In sum, Mr. Peart did inform Mr. Cloud that he was certainly eligible to continue participation in the retirement system, but that he simply did not feel it would be in Mr. Cloud's best interest to continue *if Mr. Cloud's intention was to retire within the next six months*.

Considering the disparity in each party's recollection of the conversation, the Court must decide which testimony was most credible. In so doing, it is helpful to look at all evidence presented and/or at the logical or reasonable conclusions that can be drawn from one's testimony. There were several significant pieces of evidence admitted at trial, including three letters from Mr. Cloud to LSERS, wherein Mr. Cloud made inquiries directly to LSERS regarding the amount of retirement he would be eligible to receive if he retired at that time.

On January 31, [1994] (approximately 5-6 months after the conversation between Mr. Cloud and Mr. Peart), Mr. Cloud wrote a letter directly to Kay Fontenot, Retirement Benefit Supervisor for the School Employees Retirement System, "LSERS". This letter specifically references an earlier conversation between Mr. Cloud and Ms. Fontenot regarding his retirement. The letter further requests that Ms. Fontenot calculate his monthly benefit if he were to retire at that time; Ms. Fontenot responded on February 4, 1994. Mr. Cloud sent two more written inquires to LSERS in September 1997 (received by LSERS on September 19, 1997) and on May 22, 2000. Each of these letters indicated that Mr. Cloud was considering retirement, but none of them made any inquiry about whether or not he was eligible to buy back his time and/or make contributions into the retirement system.

Mr. Cloud also testified to the fact that he was given "some little old book," which defense counsel suggested would have been the retirement handbook. Mr. Cloud testified that he probably never read the book. In addition, plaintiff's "Exhibit 3" was a Worker's Compensation/Sick Leave Option Form which was signed by Mr. Cloud. This form indicated that Mr. Cloud would be eligible to continue

3

participation in the state retirement system while on worker's compensation and/or sick leave.

LEGAL ANALYSIS

LSERS (Louisiana School Employees' Retirement System) was created by the legislature and placed under the management of a board of trustees for the purpose of providing retirement allowances and other benefits for school employees, such as plaintiff. La.R.S. 11:1001, *et seq*. All school employees are members of LSERS by virtue of the nature of their employment.

Louisiana law provides that a member who is receiving worker's compensation benefits but has not opted for disability retirement may pay contributions to the system based on a salary, not to exceed the greater of his worker's compensation benefit received from his employer or his salary at the time of qualification for worker's compensation benefits. La.R.S. 11:151. At this point, the employee's participation in the retirement system is completely voluntary. Hence, there is no duty on the Rapides Parish School Board to affirmatively inform Mr. Cloud of his right to participate in the system while on worker's compensation. *Simon v. Lafayette Parish School Board*, 93-700 (La. App. 3 Cir. 2/2/94), 631 So.2d 626 (concluding that there was no duty arising "out of the plain and unmistakable terms of a statute or ordinance" for the school board to notify Simon of his right to enroll in the retirement system); and *Alderman v. City of Shreveport*, 29,165 (La.App. 2 Cir. 2/26/97), 690 So.2d 876 [*writ denied*, 97-834 (La. 5/9/97), 693 So.2d 764,] (holding that the city of Shreveport did not have a statutory duty to inform and/or explain MPERS to its police officers).

Plaintiff is claiming that he was given misinformation by Mr. Peart and that he relied on that misinformation to his monetary detriment. The court can only determine that these claims are in negligence arising out of Louisiana C.C. art. 2315. Louisiana utilizes the duty/risk theory of negligence liability, under which a plaintiff must establish each element of negligence by a preponderance of the evidence. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 632-633. Those elements are causation, duty/risk, breach, and compensable injury. Thus, the plaintiff must establish that the defendant's actions caused the injury, that the defendant owed a duty to the plaintiff and that that duty encompassed the risk of the particular injury which occurred, that the defendant breached that duty, and that the breach resulted in a compensable injury. *Id.* at 633. Examining the plaintiff's claims under this theory, the plaintiff is evidently claiming that either the defendants owed him a duty to give him correct information and breached that duty, or that the school board did not owe a duty originally, but that they, by giving

4

information to Mr. Cloud upon which he relied, assumed a duty to give him correct information and then breached it.

The evidence clearly indicates that a conversation between Mr. Peart and Mr. Cloud did take place in or around July 1993. The parties' recollections of the conversation are clearly adverse. Mr. Cloud stated that he was informed that he could not participate in the system. Mr. Peart stated that he did inform Mr. Cloud that he was eligible for continued participation, although it was not in his best interest based on the information presented to him on that day. The objective evidence submitted at trial does support Mr. Peart's recollection of the conversation, i.e., that Mr. Cloud did anticipate retiring within six months of his injury and/or at least within the next six years. The fact that Mr. Cloud continued receiving worker's compensation and did not retire until nine years after his injury was not known to Mr. Peart.

The school board had no statutory duty to follow Mr. Cloud's progress and determine whether or not participation in the retirement system would be to his benefit as the years progressed. The record establishes that Mr. Cloud was informed by at least one school board employee (Ken Saunders) that he was eligible for continued participation in the system. Even if Mr. Peart, by giving Mr. Cloud any information at all regarding LSERS, assumed the duty of giving him correct information, the court finds that Mr. Peart's version of the events supports his contention that he did give Mr. Cloud accurate advice based on the information Mr. Cloud had given Mr. Peart about his impending plans to retire. In addition, Mr. Cloud's communication directly with LSERS in 1994, 1997, and 2002 is further evidence of Mr. Cloud's knowledge that the system was separate and apart from the Rapides Parish School Board. He had the opportunity at any time to deal directly with LSERS and obtain information regarding his eligibility to continue his participation in the system.

The court finds that the evidence supports Mr. Peart's recollection of the conversation between him and Mr. Cloud in the summer of 1993. In any event, if Mr. Cloud misunderstood information given to him by Mr. Peart, it was unreasonable for him to rely on this misinformation, especially considering the contrary information he received from Mr. Saunders and the several opportunities he had to communicate directly with LSERS. The court finds that Mr. Peart and the School Board had no duty to inform Mr. Cloud about LSERS; even if they assumed the duty to inform him correctly, the court finds that they did not breach that duty. Therefore, the court dismisses plaintiff's demands at his costs.

The judgment of the trial court is hereby affirmed, at appellant's cost.

**AFFIRMED.**